IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LACIE EDON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PNC BANK, in its own capacity and as successor to NATIONAL CITY BANK,<br><br>　　　　Defendant. | Civil Action No. 1:24-cv-02195-TWP-KMB |

**DEFENDANT PNC BANK, N.A.'S REPLY**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Defendant, PNC Bank, N.A. ("PNC"), erroneously named herein as PNC Bank, by counsel and pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), files this Reply in support of its Motion to Dismiss Plaintiff Lacie Edon's ("Edon" or "Plaintiff") Complaint.

**INTRODUCTION**

PNC's Motion to Dismiss ("Motion") establishes that Edon has no viable claim against PNC. Edon's Opposition to this Motion ("Opposition") does not remedy the deficiencies. PNC has no place in this family dispute. To the extent that Edon's parents mismanaged Edon's funds, any liability rests solely and exclusively with them or with the original drawer of the settlement checks at issue—not PNC. Despite Plaintiff's suggestion, PNC does not invent facts outside of the record or misrepresent case law to manufacture dismissal. Rather, throughout the Complaint and her Opposition, Plaintiff clings to inartful pleading and vague allegations to avoid direct allegations of the facts necessary to support her claims. Plaintiff cannot skirt her pleading obligations and hope that discovery will magically uncover facts that she is unable to plead

truthfully in her Complaint. Accordingly, for the reasons clarified below and more fully explained in PNC's Motion, this Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.     The Complaint Does Not State a Claim Under the Uniform Commercial Code.

The Uniform Commercial Code ("UCC") is the sole and exclusive statutory scheme under which Plaintiff could bring a claim against PNC as a depository bank. Edon argues she is not required to allege what statute or common law PNC allegedly violated, implying but not arguing that she has alleged a claim under the UCC generally. ECF No. 10 ("Opp."), p. 5. In essence, Plaintiff suggests that dismissal is improper because PNC merely challenges that Plaintiff failed to plead a statute or case to support her claim in the Complaint itself. Opp., pg. 5. However, PNC does not argue for dismissal solely because the Complaint does not contain sufficient legal sources. Rather, as is explained in the Motion, PNC challenges that Plaintiff has alleged a **factual basis** to warrant standing to bring **any** claim under the UCC—not that Plaintiff failed to include legal citations in her Complaint.

Regardless of Plaintiff's own identification of the UCC provision relevant to this dispute, the UCC includes a specific provision addressing conversion of an instrument—Plaintiff's purported injury and claim to relief. This statute provides that an instrument is converted if it is "taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument, or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Ind. Code § 26-1-3.1-420(a). Importantly, as raised in PNC's Motion, no claim for conversion lies against a depository bank where the plaintiff is not the payee or holder of a check. *Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F. Supp. 892, 897 (N.D. Ill. 1993) ("The payees were the only ones who had the requisite

possessory interest in the checks to bring a claim of conversion."). Persuasive and factually similar case law from Pennsylvania accords with this restriction; minor beneficiaries of settlement checks have no possessory interest where the checks are made payable to the child's parents in their capacity as the child's natural parents and guardians. *Manfredi v. Dauphin Deposit Bank*, 697 A.2d 1025, 1029 (Pa. Super. 1997) (dismissing conversion claim under the UCC brought against depository bank by a child over minor settlement funds).

Plaintiff's only true rebuttal to this argument is that she has a sufficient "possessory interest" in the Settlement Checks to support a conversion claim under the UCC through Indiana Code § 30-2-8.5-24. Opp., pg. 8. Other than reciting the statute, Plaintiff does not explain how this statute applies or salvages a claim under the UCC. Plaintiff's failure in this regard is not surprising. This statute **does not apply** to the memo lines on negotiable instruments; this code applies only to deposits into accounts that are specifically named for the benefit of minors. This statute **applies only in the limited instance** where "money is paid . . . to a financial institution for credit **to an account in the name of**" an adult as custodian for a minor under the Indiana Uniform Transfer to Minors Act. *See* Ind. Code § 30-2-8.5-24 (2) (emphasis added). This statute does not vest a possessory interest in favor of Plaintiff merely because the Settlement Checks referenced that they were for her benefit before being deposited into individual accounts in the names of her parents. *See id*.

As discussed throughout, Plaintiff does not allege that the Settlement Checks were ever actually deposited into an account in her name or her parents' names as custodians. *See* Compl. (omitting such allegations). The Complaint merely discusses the process of deposit in a passive voice to avoid alleging directly—and fatally—that the Settlement Checks were deposited into Edon's parents' individual accounts rather than custodial accounts at Plaintiff's parents' direction.

3

Thus, based on the Complaint itself, this statute has no applicability here, and Plaintiff failed to acquire a possessory custodial interest in the Settlement Checks to support a conversion claim. *Manfredi*, 697 A.2d at 1029 (dismissing conversion claim under the UCC brought against depository bank by child over minor settlement funds where check was made out to "Louis and Charlotte Manfredi, as parents and natural guardians of Michelle Manfredi, a minor").

Plaintiff's endorsement was not required for deposit, and she could not have presented the Settlement Checks for payment. Further, the Settlement Checks were never deposited into an account naming her parents as custodians. Accordingly, Edon did not have a possessory interest **sufficient to support a claim for conversion**. Thus, any UCC claim for conversion therefore fails as a matter of law.

II. **Plaintiff's Common Law Claims Fail.**

    a. **The Common Law Claims Are Preempted Because the UCC Specifically Addresses the Scenario Alleged.**

Plaintiff incorrectly argues that her common law claims are not preempted by the UCC. Plaintiff misrepresents PNC's argument in favor of preemption to suggest that PNC argues for preemption of "all commercial claims"—a theory rejected by this Court. Opp., pg. 6. PNC's argument is not nearly so broad. In fact, the parties agree that the doctrine of preemption under the UCC is limited to instances "where the UCC addresses a specific commercial practice." *See EngineAir, Inc. v. Centra Credit Union*, 107 N.E.3d 1061, 1068 (Ind. Ct. App. 2018); *Cf. Farmers Loan & Tr. Co. v. Letsinger*, 652 N.E.2d 63, 65 (Ind. 1995). PNC merely argues that the UCC addresses this specific commercial practice at issue here.

This lawsuit concerns negotiable instruments and bank deposits, which have been specifically held to be "proper subjects for commercial uniformity." *EngineAir*, 107 N.E.3d at 1067; Ind. Code. § 26-1-3.1. The validity of a deposit of a check is subject to provisions contained

4

in UCC Article 3.1. Ind. Code § 26-1-3.1-102(a), -104. Cases relied upon by Plaintiff acknowledge that "[i]f a situation is unequivocally covered by particular provisions in Article 4A, then it is beyond debate that Article 4A governs exclusively." *BMO Harris Bank N.A. v. Salin Bank & Tr. Co.*, 442 F. Supp. 3d 1075, 1081 (S.D. Ind. 2020) (cited by Plaintiff with approval). In fact, "[UCC] preemption ... extends to displacement of other law **that is inconsistent with the purposes and policies** of the [UCC], as well as its text." *Id.*, cmt. 2 (emphasis added).

Here, the UCC squarely contemplates the scenario alleged in the Complaint. The UCC conversion statute provides that "[a]n instrument is also converted if… a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment...." Ind. Code § 26-1-3.1-420(a). Here, each common law cause of action in the Complaint is predicated upon the validity of PNC's acceptance of the Settlement Checks into Edon's parents' account, rather than an unalleged (and thus, as far as the alleged facts are concerned, nonexistent) restricted account for Edon's exclusive use and benefit. Compl. ¶¶ 11-16, 24, 29, 35. In other words, the Complaint challenges PNC's payment of the Settlement Checks to a person not entitled to receive the payment.

As discussed below, under Ind. Code Ann. § 26-1-3.1-307, which governs the holder in due course affirmative defense to a conversion claim, where a fiduciary deposits an instrument into a non-fiduciary account, a holder in due course is not charged with knowledge of a claim unless there is something more than the mere deposit into the non-fiduciary account—actual knowledge of the fiduciary's breach is <u>**also**</u> required. Omitting this concept from a common law conversion claim would be inconsistent with the purposes and policies of the UCC provisions that govern negotiable instruments. *See Dice v. White Family Cos.*, 2007-Ohio-5755, ¶ 29, 173 Ohio App. 3d 472, 480, 878 N.E.2d 1105, 1111 (UCC preempted common law conversion claim where

5

holder in due course defense would be undermined). Thus, a common law conversion claim in this scenario is preempted.

Because the UCC squarely addresses the alleged scenario, and straying from its provisions to permit common law claims would be inconsistent with the purposes and policies of the UCC, Edon's common law claims for conversion, breach of fiduciary duty, and negligence are preempted by the UCC. *EngineAir, Inc.*, 107 N.E.3d at 101068; *Mandolfo v. Mandolfo*, 281 Neb. 443, 449 (2011) (common law conversion claim by payee was displaced by identical UCC conversion statute and collecting cases from a plethora of jurisdictions in agreement with this interpretation of the UCC); *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 781 (E.D. Pa. 2008).

Edon's authorities are inapposite. For example, *WWP, Inc. v. Wounded Warriors, Inc.*, No. 8:07CV370, 2009 U.S. Dist. LEXIS 64174, at *4 (D. Neb. July 24, 2009), does not salvage Plaintiff's claims. This case did not even involve a claim against a bank and thus did not attempt to impose obligations on a bank that are inconsistent with the provisions of the UCC. *Id*.

Additionally, *Richards v. Seattle Metro. Credit Union*, 117 Wash. App. 30, 33, 68 P.3d 1109, 1110 (2003) is inapposite because that case (1) involved substantially different facts and (2) applied law contrary to the law in effect in Indiana. Contrary to Edon's assertion, the instrument in that matter was <u>not</u> made out to the parent as a guardian of the minor. *Id*. Instead, the instrument identified **<u>the bank as the payee with the minor listed as the purchaser</u>**. This instrument triggered a specific provision under Washington law providing that when "an instrument is issued by the represented person . . . to the [bank] as payee, the [bank] has notice of the breach of fiduciary duty if the instrument is . . . deposited to an account other than an account of the fiduciary, as such, or an account of the represented person." *Id*.

Most importantly, as discussed herein, Indiana law is inconsistent with this provision.

However, even if this provision existed in Indiana, it would have no application because PNC is not listed as payee—the payees are Edon's parents. Because *Richards* involved a substantially different factual predicate (discussing preemption of the conversion provision of the UCC and other state-specific provisions of the UCC and a different statute not operative in Indiana), Plaintiff's reliance on this case to disprove preemption is unwarranted. Because most of the truly relevant case law confirms that the UCC squarely addresses the circumstances at issue here, the common law provisions are preempted.

### III.   Plaintiff's Common Law Claims Fail as a Matter of Law.

#### a. Plaintiff's Common Law Conversion Claim Fails.

As discussed in PNC's Motion, even if the common law claim for conversion were not preempted (it is), Edon would not have a claim because she had no possessory interest in the check. *See supra*. Edon argues she had a possessory interest in the check under Indiana Code 30-2-8.5-24. As discussed above, that provision does not salvage Plaintiff's claim for conversion as Edon did not have an interest at the time of deposit to support conversion. Plaintiff misreads and contorts this statute to save the conversion claim, but her reading is untenable and disproved by the strict language of the statute.

The Settlement Checks were made payable to Edon's parents as her natural parents and guardians. The text on the Settlement Checks "for Lacie Edon" or "UTMA Lacie Edon" did not create an obligation for PNC to create a restricted account for Lacie Edon. *Bischoff v. Yorkville Bank*, 218 N.Y.106, 112 (1916) ("The law does not require the bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check."). Thus, as Edon maintained no interest in the Settlement Checks at the time of negotiation and PNC committed to misappropriation, Edon cannot assert a

conversion claim against PNC for its acceptance of the Settlement Checks into Edon's parents' account.

Notwithstanding Edon's lack of interest in the Settlement Checks, Edon also alleges no facts to support a criminal *mens rea* on behalf of PNC, which is a required element of conversion in Indiana. *Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999); *NationsCredit Comm. Corp. v. Grauel Enterprises, Inc.*, 703 N.E.2d 1072 (Ind. Ct. App. 1998). Edon argues she alleged multiple times that PNC "knew," but those allegations are not sufficient to state a claim, particularly since the only supporting facts for "knowledge" is that the checks were negotiated by the indicated payees on the checks. This simply does not rise to the level of criminal *mens rea* to sustain a claim of conversion. *See NationsCredit*, 703 N.E.2d at 1072. In sum, Edon makes no showing of any factual circumstances indicating actual knowledge or criminal intent on behalf of PNC. As such, any claim for civil conversion through the Crime Victim's Relief Act or otherwise is subject to dismissal as a matter of law.

### b. Plaintiff's Negligence Claim Fails.

As discussed in PNC's Motion, Edon's negligence claim fails because (1) it is preempted, and (2) PNC owed no cognizable duty of care to Edon as a non-customer.

Edon argues her sparse and vague allegations should be read to create a "presumption that an account was created for Plaintiff's benefit." Opp., pg. 3. Plaintiff misstates her pleading burden to avoid the fatal reality that she cannot allege she is an accountholder. It is <u>Edon's</u> burden to plead and prove the facts necessary to support the elements of her claim. Rather than directly alleging that she was an accountholder, Plaintiff drafts her Complaint in nearly entirely passive voice to confuse the Court into believing that she had an unidentified account at PNC to which the Settlement Checks should have been deposited. In reality, Plaintiff never alleges she is (or was) an accountholder at PNC and even alleges that PNC informed her otherwise.

8

At best, Plaintiff alleges that she wanted her parents to create an account for her at PNC and deposit the Settlement Checks into a restricted account or an account in her name; however, she does not allege that the Settlement Checks ever were deposited in such a manner. This inartful and dodgy pleading is the opposite of alleging the existence of an account. Without a relationship between Edon and PNC, there is no duty. *Harper v. Hippensteel*, 994 N.E.2d 1233, 1237 (Ind. Ct. App. 2013) (duty is an element of negligence); *Auto-Owners Ins. Co. v. Bank One*, 879 N.E.2d 1086 (Ind. 2008) (banks owe no duty to non-customers); *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004) (same).

Plaintiff's non-binding case law from Washington does not compel a different outcome. *Smith v. Olympic Bank*, 693 P.2d 92, 96 (Wash. 1985) was decided under Washington law (not Indiana law), which is inapposite. Importantly, under Washington law, a purchaser of an instrument endorsed by a fiduciary has knowledge of breach of the fiduciary's duty where the instrument is negotiated "in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty." *Id*. Under this language, the *Smith* court determined that allowing a fiduciary to deposit a check made payable to him in his guardianship capacity into his own account qualified as knowledge of breach. *Id*. However, Washington law on this topic simply has no bearing in Indiana. Instead, by statute, Indiana law requires <u>actual knowledge</u> of breach of fiduciary duty by the fiduciary before imposing liability, where a fiduciary deposits a check into his or her own account. *See* Ind. Code Ann. § 26-1-3.1-307(b)(2)(C). In short, *Smith* simply does not apply in Indiana.

Edon does not allege that she was a customer of PNC at the time of the negotiation of the Settlement Checks, and she does not allege that she had any direct relationship with PNC with respect to the Settlement Checks in the Complaint. Edon cannot rectify the deficiencies in her

9

Complaint by recasting or adding facts in her Opposition to skirt her obligation to plead truthful allegations. Further, there are no facts alleged that would support actual knowledge by PNC of any breach of fiduciary duty, beyond the simple fact that the check was deposited into Edon's parents' account. Under Indiana law—as opposed to irrelevant Washington law—Edon cannot assert a negligence claim against PNC.

c. **Plaintiff's Breach of Fiduciary Duty Claim Fails.**

As discussed in PNC's Motion, Edon's breach of fiduciary duty claim fails because (1) it is preempted, and (2) PNC owed no fiduciary duty in the first instance to Edon.

As discussed above, Edon argues the Complaint should be read to show that an account was created in her name. But again, it is Edon's burden to plead and prove the facts necessary to support the elements of her claim. Edon does not allege she was an accountholder, nor does she allege any other facts that would support this claim. For instance, Edon does not allege that PNC assisted in the misuse of funds from the Settlement Checks; she alleges only that PNC improperly placed the funds from the Settlement Checks into the incorrect account. ECF No. 1-1 ¶¶ 28-29. The bare fact of the deposit of the Settlement Checks into her parents' account (the only account in existence at PNC) is not enough by itself to establish knowledge of breach of fiduciary duty in Indiana. Ind. Code Ann. § 26-1-3.1-307(b)(2)(C). Something more is needed, and no such facts are alleged. *Farmers Elevator Co. of Oakville v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010); *Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 419 (Ind. Ct. App. 2002) (banks are generally not fiduciaries for their customers).

Edon's case law does not compel a contrary result. *Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, 829 F. Supp. 2d 636, 642 (N.D. Ill. 2011) was decided under Illinois law, not Indiana law. Moreover, this case merely stands for the general proposition that an equitable claim based

on participation in breach of fiduciary duty can be alleged where the bank "had knowledge of and involvement in [the] breach that goes beyond merely accepting deposits or paying checks." *Id.*; *see also Conder*, 384 F.3d 397, 400 (7th Cir. 2004) ("[The failure to properly inspect checks] would not be negligence even if banks did have a general duty of care to noncustomers (which, to repeat, they do not).").

Here, Edon does not allege any facts beyond the mere accepting of a deposit or paying a check, and/or depositing the check into the parents' account. By statute, Indiana has determined that such facts alone do not impose a presumption of knowledge of breach of a fiduciary duty. Nor do the other cases cited by Edon establish that the Complaint alleges a viable claim for breach of fiduciary duty, or participation in such a breach, under Indiana law. *E.g., Nat'l Union Fire Ins. Co. v. Wilkins-Lowe & Co.*, 29 F.3d 337, 341 (7th Cir. 1994) ("The mere act of accepting a deposit, however, cannot amount to an act or omission which furthers or completes the breach of trust by the fiduciary."); *C.f. Smith*, 693 P.2d 92 (applying inapplicable Washington statutes). As such, Edon has not alleged a viable claim of breach of fiduciary duty.

## CONCLUSION

WHEREFORE, PNC respectfully requests that Edon's Complaint should be dismissed with prejudice and PNC be granted any other appropriate relief.

Dated: February 3, 2025　　　　Respectfully submitted,

　　　　　　　　　　　　　　　*/s/ Mark D. Kundmueller*
　　　　　　　　　　　　　　　**Mark D. Kundmueller** (Atty. No. 28427-71)
　　　　　　　　　　　　　　　Mark.Kundmueller@troutman.com
　　　　　　　　　　　　　　　**TROUTMAN PEPPER LOCKE LLP**
　　　　　　　　　　　　　　　222 Central Park Avenue, Suite 2000
　　　　　　　　　　　　　　　Virginia Beach, VA 23462
　　　　　　　　　　　　　　　Telephone: 757 687 7586

**ATTORNEY FOR DEFENDANT**
**PNC BANK, NATIONAL ASSOCIATION**

## CERTIFICATE OF SERVICE

I hereby certify that on this February 3, 2025, a copy of the foregoing ***Brief in support of its Motion to Dismiss*** was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy was additionally set via Federal Express to:

Lewis Wooton, Esq.
Wooton Hoy, LLC
13 N. State Street, Suite 241
Greenfield, IN 46140
Counsel for Plaintiff

*/s/ Mark D. Kundmueller*
**Mark D. Kundmueller**

13